499 So.2d 482 (1986)
Billy Joe HARRELL, Plaintiff-Appellant,
v.
Betty DANIELS and Horace Mann Insurance Company, Defendant-Appellee.
No. 18176-CA.
Court of Appeal of Louisiana, Second Circuit.
December 3, 1986.
Writ Denied January 30, 1987.
Richie & Richie by Byron A. Richie, Shreveport, for Billy Jo Harrell.
Mayer, Smith & Roberts by Paul Mayer, Shreveport, for Horace Mann Ins. Co.
Roland V. McKneely, Jr., Asst. Dist. Atty., Bossier City, for Bossier Parish School Bd.
Before JASPER E. JONES, SEXTON and LINDSAY, JJ.
JASPER E. JONES, Judge.
This is an appeal of a judgment rejecting a claim for damages allegedly resulting from the corporal punishment of a nine year old student by a teacher. The plaintiff-appellant is Billy Joe Harrell, individually and as administrator of the estate of his minor son, William Edward Harrell. The defendants-appellees are the Bossier Parish School Board, Betty Daniels and her liability insurer, the Horace Mann Insurance Company.
We affirm.

FACTS
On November 9, 1978, Betty Daniels was employed by the Bossier Parish School Board as a fourth grade teacher at Plantation Park Elementary School in Bossier City, Louisiana. William Edward Harrell, also known as Eddie Harrell, was a nine year old student in her class. At approximately 10:00 a.m. the teacher began having disciplinary problems with Eddie. The boy first slapped a female student in the face leaving a red mark upon her face. Ms. Daniels called Eddie to her desk, scolded him for his conduct and had him apologize. About ten minutes later Eddie began pulling on the hair and ears of another student. Ms. Daniels again called Eddie to her desk *483 and warned him not to bother the student any more. Two or three minutes later Eddie slapped the student he had been warned not to molest. The teacher then called Eddie to her desk and informed him his behavior required he receive a paddling consisting of five licks. Another pupil was asked to retrieve a wooden paddle from another classroom and then the teacher escorted Eddie out into the hallway.
Betty Sue Vanderburg, a teacher in a nearby classroom, was asked to be a witness to the paddling. Ms. Daniels administered the corporal punishment and then she, Eddie and Ms. Vanderburg returned to their respective classrooms.
Eddie completed the school day without requiring further discipline and his mother, Dennie Harrell, picked him up after school and took him to a prior doctor's appointment for allergy treatment. Eddie mentioned to his mother that he had received a paddling earlier that day but he made no complaint to any school official or to the nurse who treated him at the doctor's office. Later that evening, while Eddie was preparing to take a bath and go to bed, he complained to his mother that his back hurt. His mother then removed his clothing and observed bruises on his buttocks and in an area near his left kidney. Eddie's parents then called the police who took pictures of the injured areas. The boy was then taken to the Schumpert Hospital emergency room where he was examined and released. The report described the two bluish-red bruises 2½" by 3" in width, one bruise was located upon the left buttock and one bruise was located over the left flank.
Plaintiff contends Eddie soon began to manifest increased behavioral problems in the form of nightmares, altered personality and bed wetting. The boy never returned to Plantation Park Elementary School but entered a private school. He was treated by Dr. Paul Ware, a psychiatrist. Dr. Ware diagnosed Eddie's conduct as a very severe "separation anxiety" and had the boy admitted to Brentwood Hospital for one week. Dr. Ware further diagnosed the boy as suffering from "post traumatic stress disorder." Eddie was readmitted on February 27, 1979, due to increased aggressiveness toward his parents. The boy was discharged some three months later and he continued his treatment on an outpatient basis until September 15, 1983.
Eddie's father filed suit for damages and medical expenses on November 27, 1978, and the case was tried on September 25, 1985.
Eddie Harrell, age 16 at time of trial, testified that as his teacher was escorting him out into the hallway he grabbed the doorframe and asked that he not be punished. He related that Betty Daniels then pulled him from the doorway causing him to slip and fall face down a short distance away. Eddie also asserted that his teacher severely paddled him while he was in this prone position, with one blow being applied to his buttocks and six or seven blows to an area of his back near his kidneys. The boy testified teacher Betty Vanderburg, who was serving as a witness to the paddling, held his ankles to the hallway floor while Betty Daniels did the paddling. The boy concluded by relating his back was numb until later that evening when the real pain began and that no one else struck him that day. He did admit to receiving several earlier paddlings during the school year, one of which had been administered by Betty Daniels, but added that this instance was the only punishment which resulted in bruises.
Betty Daniels testified that on the date of Eddie's paddling she was 5'6" tall and weighed 135 lbs. and Eddie was about 4'5" tall and weighed about 100 lbs. She testified she administered the five blows strictly in accordance with school board policy which required using an approved wooden paddle approximately 2½" wide in the presence of a witness, with the boy bent over holding his ankles while the blows were struck only on the buttocks. The policy required the filing of a written report with the principal of the school of the circumstances surrounding the paddling and Mrs. Daniels testified the report was filed. She *484 related she was calm while the punishment was being imposed and did not use heavy force in applying the five licks as she had no desire to harm Eddie. Eddie bent over as required but stood upon receiving the first lick with the paddle. She also testified the boy stood up two other times interrupting the punishment until he could be coerced into assuming the proper position with his hands holding his ankles. After the paddling was complete Betty Daniels and Eddie returned to their classroom. Betty Daniels concluded by testifying she saw Eddie at recess and in the lunch room later in the day and he never complained to her about any type of pain.
Betty Vanderburg testified she witnessed the entire punishment and fully corroborated Betty Daniels' version of the events. Teacher Vanderburg denied that she held Eddie on the floor while the paddling was being imposed and stated that all licks were directed at his buttocks while he was standing in the required paddling posture. Another teacher, Joann Sheene, testified she had in the past witnessed a number of paddlings and that she was walking through the hallway while the punishment was being administered to Eddie and noticed nothing unusual or out of the ordinary about the way the paddling was being conducted. She related that if Eddie had been receiving his paddling while lying face down with someone holding his ankles she would have noticed such an unusual occurrence. Donna Rice, a third grade school teacher, testified she was teaching her class approximately fifteen feet from where Eddie was being punished and heard Betty Daniels tell Eddie to bend over. She also heard one lick being applied and the teacher restating her request to Eddie after this first blow. Donna Rice also related that it was not unusual to be able to hear conversations and paddlings from her classroom due to the quietness in the hallway. Betty Sue Woodall-Toms, the principal of Plantation Park Elementary School at the time of the incident, testified by deposition that Eddie had a history of behavioral problems dating back to the first grade and that she had investigated the incident and was satisfied that the punishment had been administered properly. The fact Eddie had a behavior problem is reflected in the following quote from plaintiff's brief:
"The parents of Eddie Harrell do not in any way dispute the fact that Eddie did have a behavior problem prior to this incident. There is overwhelming evidence that this child did misbehave at school and was frequently punished for that misbehavior. Thus, we do not contend that Eddie was a perfect angel prior to this incident ..."
The severity of this problem is reflected in the following quote from the defendant's brief which we find fully supported by the evidence in the record:
"Eddie's behavior at school from kindergarten until the time of the paddling can only be described as disruptive, aggressive, bizarre and pathological."
The court, in excellent written reasons, found the testimony of the teachers was more credible than that of Eddie Harrell and that the evidence did not establish the paddling was unreasonable or contributed to the boy's subsequent behavioral problems. The court acknowledged the photos showed some bruising upon the buttock and above it. The court expressed the opinion that any bruising on the boy in areas other than the buttock was caused by the boy's movements during the paddling rather than the teacher applying the licks in the wrong place.
The plaintiffs' assignment of error presents the following issues for decision: Did the trial court err in ruling that the corporal punishment was not administered in an excessive and unreasonable manner?

Law On Corporal Punishment of Students
Corporal punishment of students is permissible if reasonable in degree and administered by a teacher or school principal for disciplinary reasons. Guillory v. Ortego, 449 So.2d 182 (La.App. 3d Cir.1984); LSAR.S. *485 17:223.[1] The implementation of corporal punishment is to be accomplished in accordance with rules adopted by the parish or city school board. LSA-R.S. 17:416.1.[2] Factors to be considered in determining whether a teacher's corporal punishment was reasonable are age and physical condition of student, seriousness of misconduct soliciting punishment, nature and severity of punishment, attitude and past behavior of pupil and availability of less severe but equally effective means of discipline. LeBoyd v. Jenkins, 381 So.2d 1290 (La.App. 4th Cir.1980), writ den., 386 So.2d 341 (La.1980). A trial court's credibility evaluations in face of conflicting testimony is the province of the finder of fact and an appellate court may not reverse such findings in the absence of manifest error. Canter v. Koehring Co., 283 So.2d 716 (La.1973). The trial court is not bound by expert testimony which is to be weighed by the court as any other evidence. Hickman v. Hickman, 459 So.2d 140 (La.App. 2d Cir.1984).

Was the corporal punishment administered in an unreasonable and excessive manner?
The plaintiffs do not question the need to punish the student, or the size of the wooden paddle or the number of licks actually imposed. They do not challenge the use of corporal punishment itself or the procedures for its implementation approved by the Bossier Parish School Board and referred to by the parties but not offered into evidence. They do assert that evidence of a 2½"-3" wide bruise over the boy's left kidney area is unreasonable in and of itself, as it violates the school board's own procedure of not allowing any blow above the buttocks, and that the severity of the bruises shows that the force used was excessive.
Betty Daniels testified she administered the punishment in accordance with the rules adopted by the Bossier Parish School Board. All parties agree to the substance of these rules although not offered into evidence. She further related that the blows themselves were not severe in force. This testimony was corroborated by the teacher-witness, Betty Sue Vanderburg, and by another teacher, Joann Sheene, who happened to observe the punishment as it was being administered. One other teacher also related that she heard Betty Daniels give several directions to Eddie Harrell to bend over and heard at least one lick being applied between these directions. The record also reveals that Eddie Harrell himself admitted having received several prior paddlings since the beginning of school year, one of which was given by Betty Daniels, with none resulting in bruising.
We conclude the trial court was not clearly wrong in ruling that the punishment was not conducted in an unreasonable or excessive manner and the resulting physical injuries and behavioral problems were not caused by the manner in which corporal punishment was administered. The physical characteristics of Betty Daniels and Eddie Harrell, Eddie's prior history of paddlings and behavioral problems, the testimony of witnesses to the punishment showing that it was conducted in an ordinary manner without severe force being employed and testimony showing that Eddie himself voiced no real complaint of pain to anyone until much later that evening just before bed time are circumstances *486 which compel the conclusion that the trial court was well within its discretion in choosing to disbelieve Eddie Harrell's version of the events surrounding his corporal punishment. There is substantial evidence in the record to support the conclusion of the trial court that the paddling was imposed in accordance with regulation and that any bruises found in non-buttocks area were not caused by Betty Daniels' direction of the licks toward the boy. There is testimony from the principal of the school and other teachers who knew Eddie well that he had been a very difficult disciplinary problem in the school from his first year at the school which he had attended since his kindergarten year. This testimony supports the trial judge's conclusion that Eddie needed psychological help, the expense of which forms a substantial part of this damage suit, long before he received the paddling upon which this suit is based. Dr. Ware testified that before the paddling the child was suffering from a "behavior disorder of children." Dr. Ware testified the child's condition was aggravated by the paddling. The trial judge considered all the testimony of the principal and teachers as evidencing severe emotional problems Eddie had been experiencing for many years and rejected Dr. Ware's testimony that the paddling aggravated the boy's condition. We do not find this factual determination to be clearly wrong. The evidence fully mandates the conclusion the paddling was reasonable in degree and rendered for disciplinary reasons and imposed in accordance with the rules of the Bossier Parish School Board.
Judgment AFFIRMED at appellant's cost.
NOTES
[1] § 223. Discipline of pupils; suspension from school

Every teacher is authorized to hold every pupil to a strict accountability for any disorderly conduct in school or on the playground of the school, or on any school bus going to or returning from school, or during intermission or recess. Any teacher or school principal may use corporal punishment in a reasonable manner against any pupil for good cause in order to maintain discipline and order within the public schools, subject to the provisions of R.S. 17:416.1... [emphasis added]
[2] § 416.1. Discipline of pupils; additional disciplinary authority.

A. In addition to the specific disciplinary measures authorized in R.S. 17:416 teachers, principals, and administrators of the public schools may, subject to any rules as may be adopted by the parish or city school board, employ other reasonable disciplinary and corrective measures to maintain order in the schools; ... [emphasis added]