GEORGE SETLIFF, ET AL.

VERSUS

RAPIDES PARISH SCHOOL BOARD, ET AL.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 207,501
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE

**********

JOHN B. SCOFIELD
JUDGE
**********

Court composed of Sylvia R. Cooks, Marc T. Amy, Oswald A. Decuir, Glenn B. Gremillion, and John B. Scofield, Judges.[*]

REVERSED.

Cooks, J.-Dissents and assigns written reasons.
Amy, J.-Concurs and assigns written reasons.

**Laura Norton Sylvester**
**Attorney at Law**
**P. O. Box 13020**
**Alexandria, LA 71215**
**Counsel for Defendants/Appellants:**
    **Rapides Parish School Board and**
    **William Floyd**

**Silas O'Neal Jr.**
**Attorney at Law**
**P. O. Drawer 1649**
**Marksville, LA 71351**
**Counsel for Plaintiffs/Appellees:**
    **George and Theresa Setliff**

---

[*]Honorable John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

SCOFIELD, Judge.[1]

Defendants, Rapides Parish School Board and William Floyd, appeal a judgment in favor of Plaintiffs, George and Teresa Setliff, individually and on behalf of their minor son, Michael Setliff, awarding the Setliffs damages, medical expenses and costs in connection with the use of corporal punishment on Michael. We reverse the judgment of the district court and dismiss Plaintiffs' petition with prejudice.

**FACTS**

On February 21, 2001, the minor Plaintiff, Michael Setliff (hereinafter referred to as Plaintiff), was a third grader at Northwood School in Rapides Parish. Sometime after lunch Plaintiff, while on the playground, became angry with a fellow student, Orlando Williams and after making sure a teacher was not observing his actions, bit Williams on his shoulder. Defendant, William Floyd, the assistant principal who examined the wound stated that the bite was severe, teeth marks being plainly visible. He further observed that the only reason the skin was not broken, was that Williams' shoulder had been protected by his clothes.

Ms. Pamela C. Dunn, Plaintiff's teacher, had recess duty on February 21, 2001. She stated that she was getting ready to blow the whistle to call the children back to class when Williams, accompanied by several other students, showed her the teeth marks on his shoulder and reported that Plaintiff had bitten him. The other students verified Williams' story. Ms. Dunn took Williams and the witnesses to Ms. Christy Nichols, the detention teacher, and related what Williams and the other students had reported.

---

[1]Honorable John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

Because biting is an offense punishable by corporal punishment (paddling) or suspension, Ms. Nichols took Plaintiff, Williams and the witnesses to Mr. Floyd's office.

Mr. Floyd interviewed all concerned. Because of the seriousness of the offense, Mr. Floyd stated that he felt immediate "negative reinforcement" was mandated. He dismissed the other students, and, in the presence of Ms. Nichols, administered three blows to Plaintiff's buttocks with a regulation wooden paddle. He then notified Plaintiff's mother, Mrs. Teresa Setliff, of his actions. Mrs. Setliff became extremely agitated and told Mr. Floyd that he had no right to paddle Plaintiff, that she was going to call her husband and her attorney.

The record reveals that the physical consequences of the paddling were minimal. Michael testified that after the spanking, his bottom stayed red "a couple of hours." The crux of Plaintiff's damage claim is the emotional trauma allegedly suffered by Michael and his parents.

**PROCEEDINGS IN THE TRIAL COURT**

This case was tried before a judge in the district court. At the conclusion of the trial, the court rendered oral reasons from the bench finding that even though the paddling of Michael was authorized by statute and school board policy, Floyd was negligent in failing to adhere to the Setliff's request that Michael not be physically punished.

The court then awarded the following in general damages: Michael Setliff, $30,000.00; Teresa Setliff, $10,000.00; and George Setliff, $5,000.00. It also awarded medical expenses, expert fees and other expenses, plus costs.

Defendants, Rapides Parish School Board and William Floyd, appeal.

2

## LAW AND DISCUSSION

In their petition, Plaintiffs allege the following (emphasis ours):

[T]hat on or about February 21, 2001, defendant, WILLIAM FLOYD, *negligently* inflicted excruciating pain and bodily injuries on minor child, MICHAEL SETLIFF, by physically striking him *without legal authority or just cause* causing the plaintiff, MICHAEL SETLIFF, to suffer mental and physical injuries.

Louisiana law expressly provides that teachers have the legal authority to impose corporal punishment under certain conditions:

> Every teacher is authorized to hold every pupil to a strict accountability for any disorderly conduct in school or on the playground of the school, or on any school bus going to or returning from school, or during intermission or recess. Each parish and city school board shall have discretion in the use of corporal punishment. In those cases in which a parish or city school board decides to use corporal punishment, each parish or city school board shall adopt such rules and regulations as it deems necessary to implement and control any form of corporal punishment in the schools in its district.

La.R.S. 17: 223 (A).

Similarly, La. R. S. 17:416.1 (B) provides:

> Each parish and city school board shall have the discretion with respect to the use of corporal punishment. In those cases in which a parish or city school board decides to use corporal punishment, each parish or city school board shall adopt such rules and regulations as it deems necessary to implement and control any form of corporal punishment in the schools in its district. [2]

---

[2]Furthermore, Op.Atty.Gen, No. 81-1355 states in pertinent part:
Attorney General's Opinion Number 77-704 considered R.S. 17:223 and concluded, "... any rule or regulation adopted by any local school board prohibiting corporal punishment in the schools under their jurisdiction is contrary to and in non-compliance with Act 688 of 1976 (R.S. 17:223)."
In conclusion, a parish school board may not set a policy prohibiting corporal punishment by principals and teachers. Therefore, a school board should take no disciplinary action against a teacher who uses corporal punishment in a manner which is reasonable and proper. If such a teacher is sued by a parent the school board would bear the responsibility of defending the teacher. It should be noted that each school board is required to have formulated by this time, rules implementing the use of corporal punishment in the schools under the board's jurisdiction.

This court has long recognized that "[i]t is well settled from the.....statutes and jurisprudence that corporal punishment, reasonable in degree, is permitted in Louisiana." *Guillory v. Ortego,* 449 So.2d 182, 184-85 (La.App. 3 Cir. 1984)(footnote omitted).

The Rapides Parish School Board policy on corporal punishment reads as follows:

1.    Corporal punishment should be used only after other methods of seeking the student's cooperation in developing self-discipline have failed or as an alternative to suspension.

2.    Corporal punishment shall not be administered because of poor grades.

3.    Before corporal punishment is administered, the student shall be advised of his/her misconduct and shall be given the opportunity to explain his/her version of the facts.

4.    Corporal punishment shall be administered by the principal or assistant principal(s) as designated in writing by the principal, said punishment to be administered in the presence of another adult.

5.    A paddle made of wood with no holes or splinters shall be used in administering corporal punishment, said paddle not to exceed twenty (20) inches in length, one-fourth (1/4) inch in thickness and at least three (3) inches in width, with rounded edges and corners.

6.    The paddle is to be applied to the buttocks, the punishment not to exceed six (6) strokes.

7.    A record of each incident of corporal punishment shall be kept.  Upon request, the principal shall make information in said record available to the parent.

Mr. Floyd testified that the paddle he used was "regulation," that corporal punishment in this case was only administered because of the severity of the Plaintiff's attack and only after all other methods had failed.  He stated that he

4

considered suspension, but opted for paddling because he felt the Plaintiff needed immediate "negative reinforcement" and that suspending the child would cause his parents the inconvenience of a sixty mile round trip drive each day to transport the Plaintiff to and from the discipline school[3]. After he administered the three blows to Plaintiff's buttocks, Ms. Nichols, who witnessed the corporal punishment, reminded Mr. Floyd that Plaintiff's parents had orally requested that Michael not be paddled. Mr. Floyd immediately called Mrs. Setliff to report his action. At trial, Mr. Floyd testified that due to the large number of "referrals" from the school population with which he has to deal, the severity of Plaintiff's attack on his fellow student and "the shock of the event itself," he momentarily forgot that Plaintiff's parents had requested that Plaintiff not be paddled.

Defendants argue that neither state law nor the school board rules require that a teacher seek a parent's consent before administration of corporal punishment to any student. Plaintiffs argued at trial (Plaintiffs failed to file an appellate brief) that once they had orally indicated to the school officials their desire that the school refrain from imposing corporal punishment on their son, the school had a duty to follow their wishes and that Mr. Floyd was negligent when he failed to abide by their request. The trial court agreed with the Plaintiffs. Accordingly, we undertake an examination of the trial court's conclusion.

In *Pepper v. Triplet*, 03-0619, p. 27 (La.½1/04), 864 So.2d 181, 199, the Louisiana Supreme Court reiterated the following well settled principles of law:

> In order for liability in negligence to attach under our traditional duty/risk analysis, a plaintiff must prove five separate elements: (1) the

---

[3]It seems that when a student is suspended from school in Rapides Parish, the student is not just sent home but rather is assigned to a discipline school. In this case, the discipline school to which Michael would have been sent is some 30 miles from the Setliff home.

defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element). *Davis v. Witt*, 02-3102, 02-3110 (La.7/2/03), 851 So.2d 1119. Under a duty/risk analysis, the court must view the defendant and plaintiff as individual and unique social actors, taking into account the conduct of each party and the peculiar circumstances of the case. *Socorro v. City of New Orleans*, 579 So.2d 931, 938 (La.1991).

Recently, our colleagues of the fifth circuit stated:

A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Whether a duty is owed is a question of law. *Lazard v. Foti*, 2002-2888 (La.10/21/03), 859 So.2d 656. The inquiry is whether the plaintiff has any law, statutory, jurisprudential, or arising from general principles of fault, to support his claim. *Lazard, supra*; *Clayton v. Illinois Central R. Co.*, 03-972 (La.App. 5 Cir. ½7/04), 865 So.2d 896.

*Verdin v. Rogers*, 03-1457, pg. 4 (La.App. 5 Cir. 4/27/04), 873 So.2d 804, 807.

Our colleagues of the second circuit, in *Harvey v. Ouachita Parish School Board*, 545 So.2d 1241, 1244 (La.App. 2 Cir. 1989), a case involving an injury to a high school student, reminded us that:

In *Hill v. Lundin & Associates, Inc.*, 260 La. 542, 256 So.2d 620, 623 (1972), the Louisiana Supreme Court quoted from a law review article by Wex Malone explaining the rationale behind this [the duty-risk] analysis:

All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect *some* persons under *some* circumstances against *some* risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises. Malone, *Ruminations on Cause-In-Fact*, 9 Stanford L.Rev. 60, 73 (1956).

6

See also *Gresham v. Davenport*, 537 So.2d 1144 (La.1989); *Smith v. Travelers Insurance Co.*, 430 So.2d 55 (La.1983); *Dornak v. Lafayette General Hospital*, 399 So.2d 168 (La.1981).

A duty has been defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Prosser and Keeton on the Law of Torts* 356 (5th ed. 1984). The imposition of a duty depends on a case-by-case analysis. *Gresham v. Davenport, supra*.

This court has stated that "'[t]here is no rule for determining the scope of the duty, and the decision is "ultimately a question of policy as to whether the particular risk falls within the scope of the duty.' *Roberts v. Benoit*, 605 So.2d 1032, 1044 (La.1991)." *Louisiana Swabbing Service, Inc. v. Enterprise Products Co.*, 00-1161, p. 2 (La.App. 3 Cir. 5/2/01), 784 So.2d 862, 864, *writ denied*, 01-1594 (La. 9/14/01), 796 So.2d 684.

We find the Defendant's actions in this case far less severe than those of the teacher in *Harrell v. Daniels*, 499 So.2d 482 (La.App.2 Cir. 1986), *writ denied*, 501 So.2d 214 (La.1987) in which the court refused to award damages. In *Harrell* the student who was paddled was taken to an emergency room shortly after the paddling where a medical "report described the two bluish-red bruises 2 ½"" by 3"" in width, one bruise was located upon the left buttock and one bruise was located over the left flank." *Id.* at 483. In refusing to award damages, the court in *Harrell* took into consideration that the student's "behavior at school from kindergarten until the time of the paddling can only be described as disruptive, aggressive, bizarre and pathological." Much of the same can be said of Plaintiff's behavior in this case. The court in *Harrell* stated that "[f]actors to be considered in determining whether a teacher's corporal punishment was reasonable are age and physical condition of student, seriousness of misconduct soliciting punishment, nature and severity of

7

punishment, attitude and past behavior of pupil and availability of less severe but equally effective means of discipline."

For the Plaintiff to prevail in case, there must have been a breach or violation of a duty owed by the school board to Plaintiffs. In reciting its reasons for judgment, the trial court did not speak in terms of "duty" as such, but implicit in the ruling is that when Mr. and Mrs. Setliff requested that Michael not be spanked, a duty was imposed upon the school board to abide by that request. In making the duty risk analysis here, the unique circumstances of this case must be carefully viewed in the context of the school board's duty to all of its students and facility.

In addition to the seriousness of the biting incident itself, two factual circumstances are important to our consideration. First, school personal had been subjected to a relatively long standing and continual misbehavior pattern on the part of Michael - fighting, kicking, cursing, taking things from other students, taking things from the teachers' lounge, and "flipping people off" with his finger. Just one week before the biting incident, because of a kicking and cursing incident, Michael's parents were summoned to the school and a behavior management plan was put into place. None of the non-corporal disciplinary measures taken by the school staff seems to have any effect.

The second factor is the attitude of Michael's parents, especially Mrs. Setliff. In her testimony, she admitted to having complained often to school officials regarding non-physical punishment given Michael for his misbehavior, even including the punishment of giving extra homework. She complained to school authorities that one teacher yelled at Michael. She gave written instructions that Michael was not to be counseled by school counselors. Although the Setliffs

8

complained bitterly about any form of punishment administered by the school, the record contains nothing about what discipline would have been acceptable to the Setliffs. Also absent from the record is any evidence of what disciplinary measures the Setliffs themselves used to control Michael's antics.

These factors created frustration in the school officials who were charged with the duty of maintaining the best possible learning environment for all of the hundreds of students under their tutelage. The rationale of the legislature and the school board in allowing corporal punishment is based squarely upon the goal to preserve for the majority of students and teachers the best academic atmosphere achievable, even at the expense of swatting the behinds of those few miscreants who choose to disrupt the order.

Neither the statutes nor the school board policies mandate that a spanking must be administered to a student. No school official is compelled to corporally punish a child. But by allowing corporal punishment, the legislature has recognized the need for such under certain circumstances. Significantly, in giving this discretion to our school systems, the legislature made no requirement that parents must first consent to such punishment. Nor has the legislature provided that parents be allowed to issue a carte blanche prohibition of a school's exercising its rights under the statutes. To allow parents to unilaterally thwart the legally sanctioned decisions of school officials, could lead to troublesome, if not chaotic, results. There would be nothing to prevent ten, twenty or a hundred parents calling in to request that their child not be spanked. What if these same number of parents requested that no form of punishment whatsoever be administered to their children? The legislature, in its wisdom, chose not to leave the door open for such potentially dire consequences.

Granted, the will of the parents in the treatment or disciplining of their children is very important and must be heeded whenever reasonably possible. But in some instances, the desires of the parents must yield to a higher duty, *i.e.*, that which is best for all of the children, as well as those who have the enormous responsibility of educating them. We might view this case differently if Plaintiffs had filed with the school a written request that their son not be paddled, accompanied by a statement from a doctor or other qualified medical provider setting forth a medical reason why Michael should not have been spanked.

We also find instructive the provisions of La.R.S. 17:416.1 (C), wherein the legislature requires a school board to indemnify any teacher, principal or administrator should any one of them be personally sued as a result of administering punishment to a student. It is only when the actions of such school employee or representative has been adjudged to have been "malicious, and deliberately intended to cause bodily harm" that this indemnity will not apply. Accordingly, in the context of the duty to provide the best educational atmosphere to the entire student body, only the most egregious punishment will subject a teacher, principal or administrator to personal liability. This provision evidences the legislative will to provide protection to those to whom the legislature has given the discretion to use corporal punishment to maintain order in our schools.

Further, we find the public duty of the Rapides Parish school system to provide a disciplined and safe environment, conducive to learning, is a far higher duty than any private duty which may have been created by the Setliffs' request that school officials refrain from paddling their son.

There must be a strong and compelling reason to subject school authorities to a private duty which would have precedence over their higher duty to the school system as a whole. In the context of this case, we find that any duty created by the Setliffs', medically unsupported, verbal request that Michael not be paddled, must yield to the higher duty owed by the school system to the student population as a whole. Therefore, absent more than the mere unsupported, verbal request of the parents, we find no strong and compelling reason mandating a deviation from the established, legislatively sanctioned policies of the school board.

Accordingly, for the reasons stated, we reverse the judgment of the district court and dismiss Plaintiffs' suit with prejudice and at their costs. All costs of this appeal are assessed against the Plaintiffs, George and Theresa Setliff.

**REVERSED.**

**GEORGE SETLIFF, ET AL.**

**VERSUS**

**RAPIDES PARISH SCHOOL BOARD, ET AL.**


**COOKS, J**., **dissents**.

I respectfully dissent from the majority's decision to reverse the trial court's judgment and dismiss the plaintiffs' suit with prejudice.

Initially, I would note this case is distinguishable in a number of ways from the *Harrell* decision. In *Harrell* there was no request from the parents to refrain from using corporal punishment on their son. Secondly, there is no indication in *Harrell* that the child suffered from any mental disease such as ADHD. Therefore, any reliance on *Harrell* is misplaced. I also do not agree with the majority's conclusion that the Setliffs' verbal request to refrain from using corporal punishment was "medically unsupported." There was no question that Michael suffered from ADHD, was in special education, and was on medication for his ADHD. School personnel admitted they were in charge of administering medication to Michael on days he attended school. There is no question they were aware of his special medical circumstances and that he was a child in need of special attention.

Further, while it is self-evident the School Board possesses a duty to do what is best for the student body as a whole, it is unreasonable to believe this duty could only have been fulfilled by employing corporal punishment to Michael in this case. There clearly were other forms of discipline available. Mr. Floyd himself noted he could have sent Michael to a discipline school, but chose not to because it was

located approximately thirty miles from the Setliffs' home. In addition to the trial judge's legal finding that the Setliffs expressly notified the School Board that corporal punishment was not to be used as a disciplinary option, the statute requires that the court examine the entire circumstances to determine whether the administration of such punishment was reasonable. Here, there was evidence strongly suggesting that the use of such punishment as applied to this special child was not reasonable, particularly since the school was not without an alternative punishment method.

Although the trial judge hinged his ruling on the parents' express prohibition against corporal punishment, still we must affirm his judgment if for any reason the judgment is legally supportable. The trial judge could have concluded the action taken by the school board was not reasonable. The Rapides Parish School Board Policies Handbook includes a special section on "Discipline Procedures for Special Education and 504 Students." That section deals exclusively with discipline for special education students and makes no reference whatsoever to corporal punishment as a mode of discipline. William Hutcheson, who participated in the rewrite of the discipline policy handbook, noted that "special populations have handicapping conditions" and "we must make sure when we deal with special populations that any action that they make or any offense that they may commit is not committed as a result of the condition that handicaps them." Dr. Peter Milder, who treated Michael for his ADHD, stated in his medical opinion that paddling would not stop Michael's behavioral problems. Further, Mr. Floyd testified if he knew that paddling would have done nothing to deter or change the behavior for which he paddled Michael, he would not have done so. Therefore, I would affirm the trial court's judgment finding the School Board negligent for administering corporal punishment to Michael. I

reserve any comments as to the amount of damages awarded to plaintiffs, as it was not addressed by the majority's opinion.

NUMBER 04-404

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

GEORGE SETLIFF, ET AL.

VERSUS

RAPIDES PARISH SCHOOL BOARD, ET AL.

AMY, J., concurring.

I agree with the majority that a reversal is required in this matter. In my view, this matter is resolved by reference to La.R.S. 17:223 and 17:416.1, by which the legislature has clearly authorized the use of corporal punishment in public schools.